(C. D. 1575)

WESLEY & WINTER, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 13, 1954)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh* and *Richard M. Kozinn*, special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: The instant protest relates to two importations of crepe paper napkins which were classified by the collector of customs at the port of New York as manufactures of paper, not specially

provided for. Duty was accordingly assessed thereon at the rate of 17½ per centum ad valorem, pursuant to the provisions of paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T. D. 52462. In its protest, plaintiff claimed that said merchandise was dutiable at only 15 per centum ad valorem, as papers, cut to shape, within the provisions of said paragraph 1413, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802.

By amendment to the protest, and to provide against the contingency of the collector's invoking the provisions of paragraph 1404 of said act, as modified by said General Agreement on Tariffs and Trade, and by virtue thereof of assessing a rate of duty of 3 cents per pound and 7½ per centum ad valorem, plaintiff alternatively alleges the applicability of the proviso to paragraph 1404 of the Tariff Act of 1930.

The pertinent tariff provisions read as follows:

Paragraph 1413 of the Tariff Act of 1930, as modified by T. D. 52373 and T. D. 52462, *supra*:

Manufactures of paper, or of which paper is the component material of chief value, not specially provided for (except ribbon fly catchers or fly ribbons), 17½% ad val.

Paragraph 1413 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*:

Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not lithographed, and not specially provided for, 15% ad val.

Paragraph 1404 of the Tariff Act of 1930 and as modified by said General Agreement on Tariffs and Trade:

Crepe paper, commonly or commercially so known, including paper creped or partly creped in any manner:

 \*  \*  \*  \*  \*  \*  \*

Valued at more than 12½ cents per pound, 3¢ per lb. and 7½% ad val.

*Provided*, That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall be subject to a less rate of duty than that imposed upon the component paper of chief value of which such article is made: \* \* \*.

At the trial, the parties entered into a stipulation, which, in view of its brevity, we here quote in full:

MR. KLINGAMAN: Counsel agree that the items marked "A" and checked "E. T. W." by Examiner Walton on the invoice covered by this protest and assessed with duty at 17½ percent ad valorem under the provisions of paragraph

1413 of the Tariff Act of 1930 as manufactures of paper consists of paper napkins the same in all material respects, except that they are made of crepe paper, as the merchandise the subject of Freund Mayer & Co., Inc. vs. United States, Suit 4666, C. A. D. 474, and therein held dutiable under the same paragraph at 15 percent ad valorem as paper embossed, cut, die-cut, or stamped into shapes.

It is further agreed that the record in such C. A. D. 474 be incorporated in the record in this case.

Counsel for plaintiff concedes that the crepe paper of which the napkins were made is valued at more than 12½ cents per pound.

JUDGE LAWRENCE: Are the facts as stated by Mr. Klingaman agreed to by counsel in this case?

MR. WELSH: They are, your Honor, on the advice and consent of Examiner Walton.

It is evident from the foregoing stipulation of the parties that the primary classification of the merchandise at bar is not in dispute, and that, under the authority of the case of *Freund Mayer & Co., Inc.* v. *United States, supra,* paper napkins such as are here involved respond to the description of that portion of paragraph 1413, *supra,* as modified, which provides for papers, embossed, cut, die-cut, or stamped into shapes. The defendant contends, however, that paper napkins are articles, and the ones here in issue, being composed wholly or in chief value of crepe paper, and valued at more than 12½ cents per pound, are subject to the proviso to paragraph 1404, *supra,* and, hence, are dutiable at the rate of 3 cents per pound and 7½ per centum ad valorem by virtue of the General Agreement on Tariffs and Trade, *supra.* The proviso to said paragraph 1404 is invoked by defendant only with respect to the merchandise covered by entry 835615, as it is conceded that, with respect to entry 833472, the amount of duty recoverable under the provisions of paragraph 1413, *supra,* exceeds that which would accrue under the proviso to paragraph 1404, *supra.* Consequently, in no event would the terms of said proviso become applicable to entry 833472.

In principle the issue raised by the contention of the defendent was before us in the case of *Douglas Paper Company* v. *United States,* 30 Cust. Ct. 87, C. D. 1501 (Lawrence, J., not participating), which involved an importation of toilet paper in rolls. Concerning the scope and effect of the proviso in paragraph 1404, *supra,* and its bearing upon papers, embossed, cut, die-cut, or stamped into designs or shapes, we had this to say:

Of course, in the broad sense of the word, as signifying any thing of matter in the physical world, these rolls of paper are articles, as, in that sense, is the paper from which they were cut. But we think that some more restricted meaning was intended for the word in the particular context in which it is found in paragraph 1404. The article there referred to is one "composed wholly or in chief value of one or more of the papers specified in this paragraph," and presupposes a thing manufactured in whole or in part from one or more of the specified papers. Since the com-

ponent paper is itself enumerated in the paragraph, no useful purpose is served in so construing the proviso as to encompass any of the specified papers which have not been manufactured into new and different entities.

\*       \*       \*       \*       \*       \*       \*

In the case of *Hamilton et al.* v. *United States*, 167 Fed. 796, T. D. 29519, decided before the predecessor to the instant proviso became a law, the merchandise involved was paper doilies, the lace-like effects of which were produced from plain paper in a single stamping operation. The court there observed that the doilies were nothing more than the paper from which they had been stamped and had not been manufactured into articles having a different use, such as envelopes, bags, or boxes. They were held to be more properly provided for as all other paper, not specially provided for, than as manufactures of paper under the Tariff Act of 1897.

\*       \*       \*       \*       \*       \*       \*

Neither can it be said that the merchandise at bar has ceased to be paper or that it has become an article made or manufactured from paper. It serves no other purpose than the paper itself. It has been packaged and wrapped in a form which enables it to be used more conveniently, but its identity as paper has not been lost.

Whether the papers described in the pertinent portion of paragraph 1413, *supra,* are in the form of strips, as we characterized the rolls of toilet paper in the *Douglas Paper Company* case, *supra,* or in the form of squares, such as are the napkins here involved, no different interpretation of the proviso in question ought to be made. Papers which have been embossed, cut, die-cut, or stamped into designs or shapes are forms of paper, but, nevertheless, paper *per se*, rather than articles made from paper. They have no function and serve no purpose which could not likewise be fulfilled by the paper from which they have been shaped. *Hamilton et al.* v. *United States, supra.* In our view of this issue, the involved provision in said paragraph 1413 is but a more specific designation for many of the papers enumerated in the paper schedule, but no less a provision for paper as material, than are the provisions for crepe paper, bibulous paper, filter paper, copying paper, or bond paper, to mention but a few of the papers which Congress has designated by name.

In respect to filter paper, it is of interest to note that in the case of *United States* v. *H. V. Albrecht, Albrecht Import Co., Inc., and Stanley Jordan & Co.,* 27 C. C. P. A. (Customs) 112, C. A. D. 71, involving filter paper disks, ranging in diameter from 2½ to 14 inches, the decision rested upon the theory that "no new article has emanated by a manufacturing process from the paper from which the disks were cut."

We have carefully reviewed the cases cited by defendant in support of its contention that the conclusion in the *Douglas Paper Company* case, *supra,* "apparently applied too narrow a meaning to the term 'article,'" but are not persuaded thereby to such point of view. In none of the cases to which our attention has been invited were the two provisions here under consideration in competition. Those

articles of paper which would be subject to the minimum rate proviso to paragraph 1404, *supra*, are such as would, in the absence of a more precise description, find classification within the provision of paragraph 1413, *supra,* for manufactures of paper, not specially provided for. Such a commodity is not before us.

Accordingly, we hold that the merchandise here in issue, identified by the items marked "A" and checked ETW by Examiner Walton on the invoices covered by the protest, is dutiable at the rate of 15 per centum ad valorem, pursuant to the provision in paragraph 1413, *supra,* as modified, for papers, embossed, cut, die-cut, or stamped into shapes. The claim in the protest to that effect is sustained.

Judgment will be entered accordingly.