(C. D. 1966)

CLARENCE S. HOLMES *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 11, 1958)

*Abbott, Lant & Fleeson* and *Lawrence & Tuttle* (*Richard Fleeson* and *George R. Tuttle* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.
*Robert E. Canfield* as *amicus curiae.*

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: Plaintiff in this case protests the action of the collector of customs in classifying certain imported paper products as manufactures of paper, not specially provided for, and in assessing duty thereon at the rate of 17½ per centum ad valorem, pursuant to the provisions of paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T. D. 52462.

In eight protests, here consolidated for the purposes of trial, it is alleged that said merchandise falls within that portion of said paragraph 1413, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, which provides for papers, cut into designs or shapes, printed, and is, therefore, properly dutiable at the rate of 15 per centum ad valorem.

The aforementioned trade agreement modifications of paragraph 1413 contain the following language:

Manufactures of paper, or of which paper is the component
material of chief value, not specially provided for (except
ribbon fly catchers or fly ribbons) _____ 17½% ad val.
[T. D. 52373]

Papers and paper board and pulpboard, including cardboard
and leatherboard or compress leather, embossed, cut, die-
cut, or stamped into designs or shapes, such as initials, mono-
grams, lace, borders, bands, strips, or other forms, or cut
or shaped for boxes or other articles, plain or printed, but
not lithographed, and not specially provided for _____ 15% ad val.
[T. D. 51802]

This case has been submitted for decision upon an agreed statement of facts, in part oral, in part written, together with several illustrative samples of the imported merchandise. The oral stipulation provides as follows:

(1) The merchandise, consisting of paper, was imported from Canada in bundles;

(2) The said paper was imported in sheets having the following dimensions: 11½ inches x 17 inches, and it was printed, not lithographed;

(3) Each sheet contained a brand name and design;

(4) The said sheets were intended to be used at the time of importation as wrappers for individual rolls of toilet paper;

(5) The said articles were made and printed in Canada of tissue paper weighing 17 pounds per ream of 432,000 square inches;

(6) Subsequent to importation the articles were not further processed before being applied to individual toilet paper rolls by the consignee herein.

In the written stipulation, the following facts were agreed upon:

With the exception of handmade paper, all paper, including the paper from which the imported merchandise was made, is manufactured on a paper machine by a process which results in the production of a continuous rough edged strip of paper having a width approximating the full width of the paper machine and wider than desired by the purchaser of the paper.

At the end of the paper machine the rough edges of the paper strip are continuously slit off and the resultant narrower but even edged continuous strip of paper is wound into a reel.

The amount of paper slit off of each edge of the strip of paper being manufactured by the machine and the resulting width of the reel of paper is determined by the width of rolls of paper desired by the purchaser, the reel being made in multiples of such desired width.

The reel of paper is then transferred to a rewinder. On the rewinder the reel of paper is slit into two or more strips, which are then rewound into rolls of paper of the exact width and diameter specified by the purchaser. The rolls of paper are then placed on a spindle and run through a machine which prints the paper and cuts it into sheets containing four complete printed labels. The sheets fall from the printing and cutting machine into flat piles of a specified number. The piles or stacks of labels are then quartered by a guillotine shears, making of each pile four stacks of labels each measuring 11½″ by 17″.

The finished labels are then wrapped in flat bundles and shipped to the purchaser in the United States. The purchaser in the United States applies the individual 11½″ by 17″ labels to individual rolls of toilet paper.

Plaintiff contends that the instant wrappers or labels respond literally to the phraseology of the provision for papers, cut into shapes, being produced by a method therein specifically described, to wit, cutting, and in a form thereby clearly contemplated. It is urged that, although by virtue of the variety implicit in the named exemplars, no particular size, shape, or pattern is dictated, nevertheless, the form of the product at bar is sufficiently similar to bands and strips as to be entitled to the same tariff treatment. The cases of *Freund Mayer & Co., Inc.* v. *United States*, 39 C. C. P. A. (Customs) 123, C. A. D. 474; *Douglas Paper Company* and *Border Brokerage Company* v. *United States*, 30 Cust. Ct. 87, C. D. 1501; and *Wesley & Winter, Inc.* v. *United States*, 32 Cust. Ct. 24, C. D. 1575, are cited in support of the proposition that rectangular shapes, such as, for example, paper napkins, and individual sheets of toilet paper, may appropriately find classification within the provision in question.

For the defendant and *amicus curiae*, the argument is made that the merchandise at bar is something more than paper, cut to shape. It is contended that the labels in issue are completely finished manufactured articles, having been so advanced and changed by processing as to attain a new and distinctive name, character, and use. In addition, it is claimed that the provision for papers, cut into shapes, or other forms, presupposes unusual and peculiar shapes, rather than the common rectangular shape of an ordinary sheet of paper.

Whereas counsel for the plaintiff proceeds upon the assumption that the claimed provision is more specific than the one under which

the merchandise has been classified, *amicus curiae* contends that since all papers are, in the process of manufacture, cut into rectangular shapes, "A manufacture of paper (by virtue of printing) is therefore a less general, a more specific category than is a sheet of paper."

The product in issue, individual wrappers or labels for toilet paper rolls, has not previously been the subject of judicial consideration, so far as we have been able to ascertain, but the principle governing its classification would seem to have been crystallized in the cases upon which plaintiff relies.

The most pertinent of these is, in our opinion, *Freund Mayer & Co., Inc.* v. *United States, supra,* wherein it was held that individual paper napkins, printed, die-cut, and embossed in one operation, were encompassed by the provision for papers, cut into designs or shapes. In reaching that conclusion, the court found a parallel between paper napkins and disks of filtering paper such as were involved in the cases of *United States* v. *W. X. Huber Co.,* 30 C. C. P. A. (Customs) 183, C. A. D. 231, and *United States* v. *H. Reeve Angel & Co., Inc.,* 33 C. C. P. A. (Customs) 114, C. A. D. 324, and there held to be papers, cut into shapes. The court then stated:

> Certainly, if, as we there held, the filter paper, cut to a shape which rendered it a completed article ready for its intended use, was *ejusdem generis* with bands and strips, it does no violence to reason to conclude that the paper napkins here involved are *ejusdem generis* with papers, embossed, or papers stamped into shapes, such as borders. Indeed, the stipulation recites, in effect, that in the process of manufacture the individual napkins were cut or stamped and at the same time the borders of the same where embossed by means of dies.

> We think it may be questioned fairly whether in this case there exists any necessity for a construction of the involved phraseology of the paragraph by resorting to the rule of *ejusdem generis*. That portion of paragraph 1413 here invoked by appellant specifies six classes of *finished* articles, viz, "initials," "monograms," "lace," "borders," "bands," and "strips," but it also adds *"or other forms,"* and in the same clause provision is made for "[articles] cut or shaped for boxes *or other articles."* (Italics ours.) This latter phraseology would seem to cover material shaped to make finished articles for which *material* the duty rate is fixed at 30 per centum ad valorem. Where the finished articles are boxes they are provided for *eo nomine* at 35 per centum ad valorem, and in the case of finished articles other than boxes they probably would answer the description of manufactures of paper and require duty assessment at 35 per centum ad valorem.

> In the brief for the Government much attention has been devoted to the matter of "just what have been determined by this Court to be 'manufactures'." It is contended that this constitutes "the first and decisive matter of importance to be considered in the determination of the issue herein," and a number of cases are cited and discussed.

> We think it may be conceded that everything provided for in the Papers and Books Schedule of the Tariff Act of 1930, including, of course, everything in paragraph 1413, *supra,* is a form of manufacture, but we know of no form of paper which exists as a product of nature unless a hornet's nest be so considered. However, the only "manufactures of paper, or of which paper is the component material of chief value," under which the collector's classification was made are

those "not specially provided for." It is what often is referred to as a basket clause.

From the legislative history hereinbefore recited, we think it clear that the provision, under which appellant's claim was made, was introduced into customs legislation to provide specially for certain types of paper articles. It seems probable that it was done to meet a decision of a United States Circuit Court of Appeals in a case which arose before this court was created.

\*　　　\*　　　\*　　　\*　　　\*　　　\* .　　　\*

Assuming, without holding, that it may have been necessary to construe the phraseology under which appellant claims by resort to the rule of *ejusdem generis*, we feel assured that its claim is well founded and that the trial court erred in not sustaining its protest.

No more than the foregoing need be said upon the subject of the relative specificity of these competing provisions, nor with reference to the contention of defendant that the involved wrappers, being completely finished, manufactured articles, are manufactures of paper.

In the case of *Douglas Paper Company et al.* v. *United States, supra,* this court applied the rule of the *Freund Mayer* case in respect to rolls of toilet paper, produced from sheets of crepe paper, slit into strips, perforated, and rolled on cores. We held said merchandise to be paper, cut into shapes, in the form of strips, but also observed the following:

Moreover, had the individual sheets of toilet paper been separated each from the other by cutting or slitting instead of being perforated for ready separation, then there would result pieces of paper generally similar in shape to the paper napkins which formed the subject of decision in the case of *Freund Mayer & Co., Inc.* v. *United States,* 39 C. C. P. A. (Customs) 123, C. A. D. 474. They would also bear a resemblance to the filter paper disks involved in the cases of *United States* v. *W. X. Huber Co.,* 30 C. C. P. A. (Customs) 183, C. A. D. 231, and *United States* v. *H. Reeve Angel & Co., Inc.,* 33 C. C. P. A. (Customs) 114, C. A. D. 324. Both of these shapes of paper were held to fall within the provision in said paragraph 1413 for papers, cut to shape, and we do not doubt that individual sheets of toilet paper brought to that shape by a cutting process would merit the same treatment.

There is a sufficient area of identity between paper napkins and sheets of toilet paper on the one hand, and individual printed wrappers on the other, as to require the application of the same rule to the merchandise at bar. Like paper napkins, these paper wrappers are rectangular shapes. They have been produced by a process which involves both printing and the cutting of widths of paper into individual sheets. The processes are as described in the language invoked; the shapes are, by judicial construction, of the kind intended to be covered by the provision in question.

We think it of little moment that all papers are in the process of manufacture cut into rectangular shapes. What is significant is that,

in their condition as imported, the instant wrappers or labels have been cut into shapes or other forms, such as borders, bands, or strips, and have been printed. They are forms of paper which meet the statutory description and fall squarely within its terms.

Upon the foregoing considerations, we hold the merchandise at bar to be properly dutiable, as claimed, at the rate of 15 per centum ad valorem, as papers, cut into shapes, printed, within the purview of paragraph 1413 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade. The claim of the plaintiff to that effect is sustained.

Judgment will be entered accordingly.