(C.D. 2105)

BORDER BROKERAGE COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 22, 1959)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Hadley S. King* and *Eugene L. Girden* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Henry J. O'Neill* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: The question which is presented for determination in this case is the proper dutiable classification of certain imported crepe paper in rolls. The collector of customs at the port of entry classified this merchandise within the *eo nomine* provision for crepe paper, valued at not more than 12½ cents per pound, in paragraph 1404 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and, accordingly, applied the rate of 1½ cents per pound and 3¾ per centum ad valorem in assessing duty thereon.

Plaintiff claims that said merchandise is dutiable at only 15 per centum ad valorem, by reason of the provision in paragraph 1413 of said act, as so modified, for paper, cut into shapes, such as strips.

The foregoing paragraphs, as modified, provide as follows:
Paragraph 1404:

Crepe paper, commonly or commercially so known,
including paper creped or partly creped in any
manner:
    Valued at not more than 12½ cents per
    pound_____ 1½¢ per lb. and 3¾% ad val.

Paragraph 1413:

Papers and paper board and pulpboard, including cardboard and
leatherboard or compress leather, embossed, cut, die-cut, or
stamped into designs or shapes, such as initials, monograms,
lace, borders, bands, strips, or other forms, or cut or shaped for
boxes or other articles, plain or printed, but not lithographed,
and not specially provided for_____ 15% ad val.

Only one witness gave evidence at the trial of this action. He was Wilfred C. Gigler, who testified on behalf of plaintiff. This witness, who has been associated with Crown Zellerbach, the exporter of the merchandise at bar, for 20 years and is presently resident manager of the company's converting plant at Richmond, British Columbia, described the manufacturing process of the merchandise at bar as follows:

A. The wet pulp is taken from the beaters and placed on a long wire, which looks like a window screen, say 120 inches wide, and from there it is put over dryers about 12 feet in diameter, where the paper is dried. Then it is wound up into a huge 120 inch width roll, perhaps 40 or 45 inches in diameter. From there the large reel is taken and put on a winder, which is right ahead of the paper machine, and slit into these narrow widths, any width you want, and you usually trim off the edge of each edge of a large roll, because it is usually a little ragged.

Q. It is split, and then what happens?—A. You come out with this particular machine, eleven depending upon your width, or ten or nine of these wide rolls.

Q. That is rerolled?—A. Yes.

The narrow widths to which he referred are 10⅝ inches and 9½ inches, as represented by plaintiff's illustrative exhibits 1 and 2, respectively, which are long sections of paper taken from the large rolls which were imported. The rolls themselves contain 14,000 or 16,000 linear feet, and are approximately 30 inches in diameter. They are admittedly material for making paper towels.

After importation, the crepe paper is put into a folder converter which takes the paper from the roller in rolled form and folds, interleafs, and cuts it for use in towel dispensing machines. The paper, as imported, is the proper width to fit standard towel dispensers, and its width is never changed by the folder converter.

Representative samples of the completed towels, folded and interleafed, are in evidence as plaintiff's collective exhibit 3.

Counsel for plaintiff rest their contention that the imported paper toweling properly falls within the purview of paragraph 1413, as modified, *supra*, upon a long line of decisions construing said provision and generally holding that paper which has been cut from a parent roll into the shape of one of the exemplars named therein, or other forms, is aptly described by the language of the paragraph. Reference is made to the following cases, among others:

*Berg Friedberg & Co.* v. *United States*, 2 Cust. Ct. 578, Abstract 40644, holding so-called paper serpentins, consisting of strips of colored paper, one-eighth of 1 inch wide, wound around a coil, with a loop at one end for holding when in use as a streamer, to be paper, cut into strips, within the contemplation of said provision.

*United States* v. *W. X. Huber Co.*, 30 C.C.P.A. (Customs) 183, C.A.D. 231, and *United States* v. *H. Reeve Angel & Co., Inc.*, 33 C.C.P.A. (Customs) 114, C.A.D. 324, involving filter paper disks held to be papers, cut into designs or shapes.

*Freund Mayer & Co., Inc.* v. *United States*, 39 C.C.P.A. (Customs) 123, C.A.D. 474, and *Wesley & Winter, Inc.* v. *United States*, 32 Cust. Ct. 24, C.D. 1575, wherein it was determined that paper napkins were papers, cut to shape.

*Clarence S. Holmes* v. *United States*, 40 Cust. Ct. 99, C.D. 1966, requiring similar classification for rectangular wrappers for rolls of toilet paper.

Particular stress is placed upon this court's decision in the case of *Douglas Paper Company and Border Brokerage Company* v. *United States*, 30 Cust. Ct. 87, C.D. 1501, holding that toilet paper in rolls, 4½ inches wide and approximately 97 yards long, perforated and rolled on cores, was paper, cut into strips, within the scope of paragraph 1413. We there stated:

Counsel for the plaintiffs urge that the "instant paper was produced by a method and in a form contemplated by [the] initial portion of paragraph 1413," and we are of opinion that a literal interpretation of the words relied upon, in the light of the factual record here presented, compels an acceptance of this contention. In the very strictest sense, the merchandise before us consists of strips of crepe paper which have been cut from a parent roll. No more apt expression for a description of this merchandise can be found than that it is paper, cut into shapes in the form of strips. Thus, the description itself invokes almost the identical language employed by Congress in the provision in question.

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

A "strip" is defined in the 1948 edition of Webster's New International Dictionary of the English Language as:

A narrow or relatively long piece; as, a *strip* of cloth; a *strip* of land.

It is here urged that paper, cut into widths of 9½ or 10⅝ inches and of a length of 14,000 or 16,000 feet "is every bit as much a 'strip' as the 4½ inch by 97 yard paper of the *Douglas* case, *supra*." We are

constrained to agree, inasmuch as the characteristics of width and length meet the definition of the term "strip," which we have previously cited with approval, and the material at bar has been brought to that condition by one of the processes enumerated in said paragraph 1413.

Counsel for the Government argues, however, that the named exemplars in said paragraph 1413 relate to finished articles, ready in their imported condition, for their intended use, as illustrated by the items under consideration in the cases hereinabove cited. It is urged that since the subject paper is concededly material for making finished towels, which had not reached that stage prior to importation, it is excluded from the paper-cut-to-shape provision.

We have had occasion to consider this contention in the recent case of *John V. Carr & Son, Inc.* v. *United States*, 43 Cust. Ct. 290, Abstract 63200, in connection with an importation of pulpwood strips used for insulation and coring between plywood faces in the manufacture of doors. It there appeared that the strips, as imported, were in lengths of 48 or 72 inches and that, prior to use, they were reduced to lengths of from 6 to 32 inches. Counsel for the plaintiff made the argument, advanced by the defendant in the instant case, that the paper-cut-to-shape portion of paragraph 1413, *supra*, should be invoked only with respect to finished articles, by reason of the following statement in the case of *Freund Mayer & Co.* v. *United States, supra*:

We think it may be questioned fairly whether in this case there exists any necessity for a construction of the involved phraseology of the paragraph by resorting to the rule of *ejusdem generis*. That portion of paragraph 1413 here invoked by appellant specifies six classes of *finished* articles, viz, "initials," "monograms," "lace," "borders," "bands," and "strips," but it also adds *"or other forms,"* and in the same clause provision is made for *"[articles] cut or shaped for boxes or other articles."* (Italics ours.) This latter phraseology would seem to cover material shaped to make finished articles for which *material* the duty rate is fixed at 30 per centum ad valorem. Where the finished articles are boxes they are provided for *eo nomine* at 35 per centum ad valorem, and in the case of finished articles other than boxes they probably would answer the description of manufactures of paper and require duty assessment at 35 per centum ad valorem [All italics quoted.]

In holding that contention to be without merit, we stated:

As we construe the *Freund Mayer* case, *supra*, it was not intended as an affirmative holding that only finished articles are contemplated by the portion of paragraph 1413 here under consideration. On the contrary, it seems clear that the court intended the interpretation to be that the fact that a paper article may have been finished or completely manufactured did not preclude its being encompassed by the provision. This is the logical interpretation necessarily flowing from the circumstance that the merchandise there at issue consisted of paper napkins ready for immediate use, and appears to be an answer to the contention of the Government who, as appellee, had urged that the paper-cut-to-shape portion of paragraph 1413 was limited to articles which had not reached the stage of being manufactures of paper.

\*     \*     \*     \*     \*     \*     \*

The essential characteristics of an article which entitle it to be called a strip are relative length against narrow width. Whether the article has further to be treated to prepare it for a designated use, or is otherwise unfinished as regards its adaptability for any other purposes, it is, nonetheless, a strip whenever these two elements coexist. In other words, its identity as a "strip" is established by, and derives solely from, its dimensional aspects, and an article does not become something other than a strip simply because, when applied to its destined use or uses, it is shortened in length, or further narrowed in width.

The imported toweling became a strip when it was cut from the initial roll into its individual narrow width. Without regard to its contemplated use, it acquired a form responding to the common meaning of that term when the slitting operation was completed. To the extent that it was a strip, it was equally a *finished strip*. Subsequent processing was necessary, not to create a form recognizable as a paper strip, but to produce an item recognizable as a paper towel.

We are unable to conclude that the shapes and forms provided for in said paragraph 1413 are those only which are usable without further processing. It is the form or the shape, not the use which is the statutory determinant. Since the toweling at bar possessed the requisite form at the time of importation, and merchandise is dutiable in its condition as imported, it is clearly paper, cut into strips, within the purview of paragraph 1413, as modified, *supra*.

We turn now to a consideration of whether the subject crepe paper toweling is, nevertheless, dutiable at the rates provided for in paragraph 1404, *supra*, by virtue of the proviso to that paragraph, as originally enacted, which reads as follows:

*Provided,* That no article composed wholly or in chief value of one or more of the papers specified in this paragraph shall be subject to a less rate of duty than that imposed upon the component paper of chief value of which such article is made:

Little more need be said than that the language of said proviso has been previously construed by us as not applying to papers enumerated in paragraph 1404, but more specifically provided for in paragraph 1413 as papers, cut into shapes or forms. See *Douglas Paper Company et al.* v. *United States* and *Wesley & Winter, Inc.* v. *United States*, cited, *supra*. In substance, those cases express the view that papers, cut into the shapes provided for in paragraph 1413, do not cease to be paper *per se*, and, hence, are not articles "composed wholly or in chief value of one or more of the papers specified in this paragraph," within the contemplation of said proviso to paragraph 1404.

Based upon the foregoing considerations, we hold that the merchandise at bar is dutiable at the rate of 15 per centum ad valorem, within the provisions of paragraph 1413, as modified, *supra*, for papers, cut into shapes, such as strips. The claim in the protest to that effect is sustained.

Judgment will be entered accordingly.